UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

IN RE

RANDY E. BYERS and                    Chapter 12
JUDY E. BYERS                         No. 08-81053

            Debtors

**FIRST AMENDED CHAPTER 12 PLAN OF REORGANIZATION**
**[11 USC §§1221 *et seq.*]**

**1.00. INTRODUCTION.**

    1.    On April 18, 2008 ("date of filing"), debtors filed their voluntary petition for reorganization under Chapter 12 of the United States Bankruptcy Code (11 USC §§1201 *et seq.*). Debtors filed their initial plan of reorganization on November 4, 2008. This is their first amended plan.

    2.    This plan of reorganization is the debtors' proposal to pay the debts they owed on the date the petition was filed.

    3.    The following schedules are attached to this plan and are an integral part hereof:

| Schedule No. | Description |
|---|---|
| 1 | Plan Summary |
| 2 | Cash Flow (Projected) |
| 3 | Combined Pro Forma Balance Sheet After Reorganization And Analysis Of Dividend If Case Converted To Liquidation Under Chapter 7 |
| 4 | Summary Of Prior Tax Returns |
| 5 | Nature of Debtors' Business |

    4.    The debtors submit all or such portion of their future earnings or other future income to the supervision and control of the trustee as is necessary for the execution of the plan. 11 USC §1222(a)(1).

    5.    The plan need not receive creditor approval (11 USC §1225), but the court must find that the plan has been proposed in good faith and that the plan complies with the other requirements of §1225. If this plan is not accepted and approved, then the court may--

a.    Dismiss the case; or

b.    Allow the debtors to propose another plan.

6.    As the debtors are farmers, the case cannot be converted to liquidation under Chapter 7, except for fraud in connection with the case.  11 USC §1208(d).

7.    The debtors believe that the plan will produce more for creditors than they would receive if the case was liquidated under Chapter 7 (straight bankruptcy).

## 2.00.  DEFINITIONS.

1.    Definitions:

**Administrative Convenience Claims.**  "Administrative Convenience Claims" are a separate class of claims consisting of only every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.  11 USC §1122(b).

**Balloon Payment.**  "Balloon payment" means that the remaining balance due a creditor shall be paid (or refinanced) on the specified balloon payment date.

**Base Dividend.**  "Base dividend" means that the debtors will pay a fixed amount to a particular class of creditors in full of the debtors' aggregate obligations to that class, without deficiency. The payment will then be divided, pro rata, among the creditors in that class whose claims are duly allowed.  The amount which a creditor receives is determined by the following formula:

$$BPD = \frac{AC}{TC} \times BD$$

Where:

AC =  The amount of the individual creditor's allowed claim.

TC =  The aggregate (or total) allowed claims in the base class.

BD =  The aggregate Base Plan Dividend to be paid to the class as a whole.

BPD=  The amount which the individual creditor will receive as his Base Plan Dividend.

**Claim.**  "Claim" means a duly-scheduled or timely-filed claim which is allowed and ordered paid by the court.

**Court.**  "Court" means the United States Bankruptcy Court for the Central District of Illinois.

**Creditors.** "Creditors" mean all creditors of the debtors holding claims for secured or unsecured debts, liabilities, demands or claims of any character whatsoever.

**Deed In Lieu Of Foreclosure.** "Deed in lieu of foreclosure" means a conveyance by the debtors of real estate to a creditor by quit-claim deed in full settlement of the obligation, without deficiency. Any junior creditor has the option to purchase the real estate by paying to the senior creditor the full amount of the senior obligation, or by assuming the senior obligation. If no junior creditor assumes or pays the senior obligation, then all such junior creditors are deemed, as to the tract conveyed, to be unsecured, and each such junior creditor shall promptly release his lien or encumbrance.

**Effective Date.** "Effective date" means that date on which an order confirming the plan becomes final and nonappealable. Generally, if the order is not appealed, the Effective Date is the 11th day following entry of an order confirming the plan. Rule 8002, Federal Rules of Bankruptcy Procedure.

**Impaired Claim.** "Impaired claim" means a claim or equity interest which is modified in some respect by the terms of the order of confirmation and which has not been otherwise consensually modified by agreement of the debtors and the creditor.

**Manner Of Payment - By Trustee.** "Manner of payment - by trustee" means payments by the debtors or others to the Chapter 12 trustee who, in turn, shall disburse them pursuant to the plan. Payments by the trustee are subject to trustee's fees. Payments made by the trustee are sometimes referred to as "payments inside the plan".

**Manner Of Payment - Direct by Debtors.** "Manner of payment - direct by debtors" means payments made directly by the debtors to creditors pursuant to the plan which payments bypass the Chapter 12 trustee. Payments direct by the debtors are not subject to trustee's fees. Direct payments by the debtors which bypass the trustee are sometimes referred to as "payments outside the plan".

**Plan.** "Plan" means this plan of reorganization in its present form or as it may be amended or supplemented.

**Post-Petition Debts.** "Post-petition debts" are debts which were incurred on and after the date of filing.

**Pre-Petition Debts.** "Pre-petition debts" are debts which were incurred prior to the date of filing.

**Prime Rate.** "Prime rate" means the average prime rate of interest (the base rate on corporate loans at large U. S. money center commercial banks) as published in the "Money Rates" column of <u>The Wall Street Journal</u>.

**Secured Creditors.** "Secured creditors" mean all creditors who hold a lien, security interest, or other encumbrance which has been properly perfected as required by law with respect to property owned by the debtor.

**Tense; Gender.** The singular tense includes the plural; the masculine gender includes the feminine and the neuter.

**Trustee.** "Trustee" means the Chapter 12 trustee appointed pursuant to 11 USC §1202.

**Unimpaired Claim.** "Unimpaired claim" means is a claim which will be paid, after confirmation, in accordance with the tenor of the creditor's contract with the debtor, or a claim which has been consensually modified by agreement of the parties subsequent to the Chapter 12 petition but prior to the entry of an order of confirmation.

## 3.00.  CLASSIFICATION OF CLAIMS.

1.    All claims shall be fixed and determined as of the date of filing.

2.    Secured claims as finally allowed and ordered paid by the court, shall be treated as secured only to the extent that such claims are not greater than the value of the debtors' assets which the court finds are valid security for such claims.  See 11 USC §506 and Bankruptcy Rule 3012.

3.    The classification of claims and their treatment are combined.

## 4.00.  INTEREST; PENALTIES; ACCELERATION.

1.    If the agreement between the parties so provides, a creditor may accrue interest on his claim (at the rate provided in the agreement) through the date of filing.

2.    Unless otherwise specifically provided in this plan:

    a.    No creditor shall accrue interest on his claim after the date of filing.

    b.    Interest on the allowed secured component of a claim shall begin to accrue on the date of confirmation of this plan.

3.    Each creditor waives:

    a.    Default interest.

b.    Penalties.

c.    The right to accelerate payment unless the debtors default in their payments under the plan after the plan's effective date.

d.    Contractual attorney's fees unless:

1.    The contract so provides; and

2.    The creditor is oversecured.

4.    If the debtors are required to pay a creditor's attorney's fee pursuant to §4.03(d):

a.    The amount of the fee shall be reasonable.

b.    If the parties cannot agree on the amount of the fee, it shall be determined by the court.

c.    The fee shall be paid in three equal annual payments, without interest, commencing on the first day of the month following the plan's Effective Date.

## 5.00.  EXPENSES OF ADMINISTRATION; PRIORITY CLAIMS ("P" Class Claims).

| "P" CLASS CLAIMS [Priority Claims] |
| --- |
| Class "P" creditors are creditors entitled to priority under the Bankruptcy Code. |
| Priority claims include costs of administration, eligible employees' claims, and federal, state, and local taxes which are entitled to priority. |

1.    The "P" class claims are classified and shall be paid as follows:

Class P1:  Costs and Expenses of Administration
Impaired?  No

Except as otherwise specifically provided in this plan, within 60 days following the plan's Effective Date, debtors shall pay the costs and expenses of administration as defined by §§507(a)(1) and 503(b).

Class P2:  Post-Petition Operating Expenses
Impaired?  No

Debtors shall pay their post-petition operating expenses in accordance with the terms of the agreements made with their post-petition creditors.

Prior to December 31, 2008, debtors shall pay in full a secured obligation to Leonard and Brian Kremer.  The source of the funds will be the 2008 crop. Immediately upon payment in good funds, the Kremers shall release the mortgage on Rodney's farm and shall release any security interests on his

property and his wife, Ginger's, or on the property of Randy E. Byers and Judy E. Byers.

<u>Class P3:  Attorney's Fees and Expenses</u>
Impaired?  No

The attorney's fees and costs of Barry M. Barash of Barash & Everett, LLC, are subject to court approval.  11 USC §§327, 328, and 330.

Class P4A:  Tax Claims of the United States of America,
<u>acting through Internal Revenue Service</u>
(2007 Income Taxes)
Impaired?      Yes

| | |
|---|---|
| Amt. of allowed claim: | $14,505.31 |
| Annual payment: | To be determined by trustee |
| Interest rate: | 6% |
| Interest accrues from: | N/A |
| Amortization: | To be determined by trustee |
| Date of next payment: | February 1, 2010 |
| Manner of payment: | First three payments through trustee, remainder direct by debtors |
| Other: | The claims of the Internal Revenue Service are governed by a stipulation between the debtors and IRS signed March 3, 2009 (**Exhibit A**) |

Class P4B:  Tax Claims of the United States of America,
<u>acting through Internal Revenue Service</u>
(941 Tax - 1st Quarter 2008)
Impaired?      Yes

| | |
|---|---|
| Amt. of allowed claim: | $1,588 |
| Annual payment: | $377 |
| Interest rate: | 6% |
| Interest accrues from: | N/A |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2010 |
| Manner of payment: | First three payments through trustee, remainder direct by debtors |

<u>Class P5: 11 U.S.C. §1222(a)(2)(A)</u>
Impaired?  Yes

Debtors invoke the protections of this section and should any claim (other than the claims referenced in **Exhibit A**, the stipulation between the debtors and IRS) be owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtors' farming operation, the claim shall be treated as an unsecured claim that is not entitled to priority under §507.

Any Class P5 claim shall be treated as a Class U1 unsecured claim and paid in the same manner as the other Class U1 creditors.

2.     Payments made to any taxing body shall be applied by the recipient first to the "trust fund" portion of the debtors' tax liability. 26 USC §§3402; 7501(a); 6672. <u>United States v Energy Resources Co., Inc.</u>, 495 US 545, 109 L Ed 2d 580, 110 S Ct 2139 (1990).

## 6.00.  CASH COLLATERAL CLAIMS ("CC" Class Claims).

| "CC" CLASS CLAIMS<br>[Claims Secured By Cash Collateral] |
| --- |
| Class "CC" creditors are creditors who have security interests in "cash collateral" (stored and growing crops, livestock, and the like) as defined by §363(a) of the Bankruptcy Code. Class CC creditors also include creditors secured by the cash value of life insurance, pledges of certificates of deposit or warehouse receipts and similar items. Class CC creditors are unimpaired and will be paid 100% as the collateral is sold. |

1.     The "CC" class claims are classified and shall be paid as follows:

Class CC1: Security Savings Bank
Security interest in proceeds of cows and calves.  Cash collateral.
Impaired?  No

Class CC2: Security Savings Bank
Security interest in 894 bushels of corn.  Cash collateral.
Impaired?  No

Class CC3: Security Savings Bank
Security interest in hay, silage, feed and straw inventories.  Cash collateral.
Impaired?  No

Class CC4: American General Life Insurance Co.
Security interest in cash value of life insurance.  Cash collateral.
Impaired?  No

The debtors will pay each claim in accordance with the tenor of its respective contract.  All CC class claims will be paid direct by debtors.

## 7.00.  CLAIMS SECURED BY SENIOR LIENS ON REAL ESTATE ("S" Class Claims).

| "S" CLASS CLAIMS<br>[Senior Liens Secured By Real Estate] |
| --- |
| Class "S" creditors are creditors who are secured by first mortgages, contracts or other senior liens secured by real estate. |

1.     Rodney (but not Ginger) owns a 194-acre farm in Swan Township, Warren County, Illinois (Tract 2).  The dwelling on Tract 2 is occupied by Rodney's parents, Randy and Judy Byers.  An integral part of this plan is as follows:

a.     Rodney, with the advice and consent of Security Savings Bank, will cause approximately 20 acres of

Tract 2 to be surveyed by a licensed Illinois land sur-
veyor. The 20-acre tract will contain the existing hog
facilities as well as new facilities to be constructed. For
convenience, the 20-acre tract shall be known as Tract
2A and the remaining 174 acres shall be known as
Tract 2B. The legal description of the entirety of Tract 2
is attached as **Exhibit R**.

b.   On the plan's Effective Date, Rodney will convey to
Randy and Judy Byers, as joint tenants and not as
tenants in common, an undivided one-half interest in
Tracts 2A and 2B. The conveyance will be subject to
the liens hereinafter described.

c.   Rodney and Ginger and Randy and Judy will execute
and deliver to DeKalb Feeds, Inc., their promissory note
which will be secured by a first mortgage on Tract 2A,
and by a first security interest in the output of a contract
to finish hogs between Rodney and Randy and Brad
and Lyle Stoecker.

d.   The terms of the arrangement with DeKalb are set forth
in a stipulation to accept plan filed March 12, 2009. The
stipulation is incorporated by reference in this plan and
is attached as **Exhibit B**.

e.   Also, as quickly as practicable after the plan's Effective
Date, Rodney, Ginger, Randy and Judy shall execute
and deliver to Security Savings Bank their promissory
note for $900,000 with interest at 3.75% fixed for five
years, and thereafter adjustable each three years. The
interest rate will reset each three years indexed at the
three-year U.S. Treasury Notes plus 3%; provided, that
the rate increase shall not exceed 2% over the previous
rate. Payments will be reamortized within the remaining
term using the new interest rate and principal balance.
The amortization shall be 30 years and the payments
shall be $25,113 semi-annually, on June 1 and Decem-
ber 1 of each year, commencing June 1, 2009.

f.   In addition to the first mortgage on Tract 2B, Security
shall have a second mortgage on Tract 2A and shall
have a security interest in Rodney's and Randy's farm
equipment and machinery (it being understood that
some of the machinery is encumbered to others or
leased from others and in that event Security's security
interest shall be subordinate to such other secured
creditors).

g.   If Security and the Byers can reach agreement on
production financing for 2009 or any subsequent year,
then they shall give Security such collateral and execute
such documents as Security may reasonably require.

But if Security is unwilling to provide production financ-
ing and the Byers go elsewhere, Security will have no
interest in the crop or proceeds.

## 8.00. CLAIMS SECURED BY LIENS ON PERSONAL PROPERTY ("UCC" Class Claims).

| "UCC" CLASS CLAIMS |
| :---: |
| [Claims Secured By Security Interests In Personal Property] |
| Class "UCC" creditors are creditors who are secured by senior or junior security interests in personal property. |

1.   The "UCC" class claims are classified and shall be paid as follows:

Class UCC1: Security Savings Bank
Security interest in farm machinery and equipment.
Impaired?     Yes

| | |
| --- | --- |
| Amt. of allowed claim: | $83,475 |
| Annual payment: | $20,962 |
| Interest rate: | 8.10% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2009 |
| Manner of payment: | First three payments through trustee, remainder direct by debtors |

Class UCC2: Community National Bank
Security interest in 2005 Dodge Caravan.
Impaired?     Yes

| | |
| --- | --- |
| Amt. of allowed claim: | $7,500 |
| Monthly payment: | $228.17 |
| Interest rate: | 6% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 36 months |
| Date of next payment: | On the first day of the month following the plan's Effective Date |
| Manner of payment: | First 36 payments through trustee, remainder direct by debtors |

Class UCC3: Community National Bank
Security interest in 2005 Arctic Cat 500.
Impaired?     Yes

The collateral securing the Class UCC3 claim of Community National Bank
shall be returned to the creditor in full of the obligation, without deficiency.

Class UCC4: Community National Bank
Security interest in 2005 Honda Foreman.
Impaired?     Yes

| | |
|---|---|
| Amt. of allowed claim: | $3,645 |
| Annual payment: | $1,363 |
| Interest rate: | 6% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 3 years |
| Date of next payment: | February 1, 2009 |
| Manner of payment: | First three payments through trustee, remainder direct by debtors |

Class UCC5: Diversified Financial Services
Security interest in H & S spreader.
Impaired?     Yes

| | |
|---|---|
| Amt. of allowed claim: | $9,400 |
| Annual payment: | $2,232 |
| Interest rate: | 6% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2009 |
| Manner of payment: | First three payments through trustee, remainder direct by debtors |

Class UCC6: 1st Farm Credit Services
Security interest in 2006 John Deere 6420 tractor and loader.
Impaired?     No
(See Stipulation to Accept Plan Filed 12/8/08)

| | |
|---|---|
| Amt. of allowed claim: | $36,025.79[1] |
| Annual payment: | $7,764.45 |
| Interest rate: | 7.15% |
| Interest accrues from: | Date of last payment |
| Amortization: | Per contract |
| Date of next payment: | February 1, 2009 |
| Manner of payment: | Direct by debtors |

---

[1] 1st Farm Credit Services shall be entitled to accrue contract interest, together with its reasonable attorney's fees to the date of confirmation.

### Class UCC7: John Deere Credit
Security interest in 2006 John Deere 5525 tractor and loader.
Impaired?     No

| | |
|---|---|
| Amt. of allowed claim: | $11,230 |
| Quarterly payment: | Per contact |
| Interest rate: | Per contract |
| Interest accrues from: | Date of last payment |
| Amortization: | Per contract |
| Date of next payment: | Per contract |
| Manner of payment: | Direct by debtors |

### Class UCC8: Wells Fargo Auto Financial
Security interest in 2008 Chevrolet Silverado.
Impaired?     No

| | |
|---|---|
| Amt. of allowed claim: | $33,745 |
| Annual payment: | Per contract |
| Interest rate: | Per contract |
| Interest accrues from: | Date of last payment |
| Amortization: | Per contract |
| Date of next payment: | Per contract |
| Manner of payment: | Direct by debtors |

### Class UCC9: Security Savings Bank
Security interest in debtors' one-half interest in cows, heifers and bulls.
Impaired?     Yes

| | |
|---|---|
| Amt. of allowed claim: | $7,444 |
| Annual payment: | $1,869 |
| Interest rate: | 8.10% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2009 |
| Manner of payment: | First three payments through trustee, remainder direct by debtors |

## 9.00.  TRUE LEASES ("L" Class Claims).

| "L" CLASS CLAIMS<br>[True Leases] |
|---|
| Class "L" creditors are creditors who are "true" lessors of personal property (as contrasted with leases in the nature of security agreements under which the lessee has the option to purchase the leased property at the conclusion of the lease term with a nominal payment).  Under a "true" lease, the lessee may purchase the property for its fair market value.  "L" class claims also include the cure of arrearages on leases of real property. |

1.  The "L" class claims are classified and shall be treated as follows:

Class L1: Leasing Specialists, Inc.
Impaired?     No

The debtors have affirmed their lease of the following items from Leasing Specialists, Inc., and shall continue to make their regular payments direct to creditor:

Used H&S HD silage wagon (twin auger HD) SN 303309
Used H&S HD silage wagon (twin auger HD) SN 303252
Used H&S HD silage wagon (twin auger HD) SN 303336
Used H&S HD silage wagon (twin auger HD) SN 303307

Class L2: Graber Services, LTD
Impaired?     No

The debtors affirm their lease of the AG BAG model G-6070C silage bagger from Leasing Specialists, Inc., and shall continue to make their regular payments direct to creditor.

**10.00.  UNSECURED CLAIMS ("U" Class Claims).**

| "U" CLASS CLAIMS [Claims Of Unsecured Creditors] |
|---|
| Class "U" creditors include all of the unsecured creditors, the unsecured or undersecured components of secured creditors liens, and contingent unsecured claims. |

1.  The "U" class claims are classified and shall be paid as follows:

Class U1:  Unsecured Claims
All unsecured claims (except contingent claims).
Impaired?  Yes

As a dividend to the Class U1 unsecured creditors, the debtors shall pay to the trustee the sum of $20,000 at the rate of $4,000 per year for five years, on or before February 1 of each year, commencing February 1, 2010.  Prior to making any distribution to the Class U1 creditors, the priority claim of the Internal Revenue Service (Class P4A - $14,505.31) shall first be paid, with interest as set forth in the Class P4A claim.  The balance shall be distributed pro rata to the unsecured creditors.

Payments to Class U1 claimants shall be in full settlement of all unsecured claims.  A schedule of estimated payments to the Class U1 creditors is an exhibit to this plan.  As the amounts of the claims are in part estimated, the net payable to a particular unsecured creditor may vary, depending upon the total aggregate claims.

## 11.00.  CHAPTER 12 TRUSTEE'S FEE.

1.    The Chapter 12 trustee's fee in this case is fixed at 5% of the amount actually distributed to creditors by the trustee, to be paid concurrently with the payments to creditors as provided in the plan.  In addition to the payments to creditors provided for in this plan, the debtors shall pay to the trustee his statutory fee.

## 12.00.  GENERAL PROVISIONS.

1.    **Retention Of Jurisdiction.**  The court shall retain jurisdiction of this case until all claims have been paid in full.

2.    **Property Vests In Debtors.**  The confirmation of this plan vests all of the property of the estate in the debtors free and clear of any claim or interest of any creditor except as otherwise provided in the plan or in the order confirming the plan.  11 USC §§1227(b) and (c).

3.    **Post-Confirmation Financing.**  Debtors may obtain post-confirmation financing secured by assets which have revested in the debtors without further order of court.  Debtors may also use revested property to the extent it is not encumbered by this plan or order of confirmation to secure post-confirmation credit.  11 USC §1227.  Without limitation of the foregoing, debtors may, without further order of court:

    a.    Obtain loans from United States of America, acting through United States Department of Agriculture, Commodity Credit Corporation, secured by grain.

    b.    Obtain loans secured by post-petition crops.

Debtors shall give the Chapter 12 Trustee advance written or verbal notice of their intention to borrow pursuant to this section.

4.    **USDA Executory Contracts.**  Debtors affirm all executory contracts (whether pre-petition or post-petition) between themselves (or either of them) and the United States of America, acting through the United States Department of Agriculture.

5.    **Full Settlement.**  The payments made and received under this plan shall be in full settlement and compromise of the debtors' obligations.  11 USC §1227.

6.    **Prepayment.**  The debtors may prepay all or any portion of the reorganized debt at any time, without penalty.

7.    **Discharge.**  After the debtors successfully complete the plan (except for secured obligations which are paid over a longer period than unsecured obligations), they shall be discharged from any further obligations to any of their creditors.  11 USC §1228.

8.    **Security Interest Retained.**  Until the allowed secured claim to a secured creditor has been paid in full, that creditor shall retain its security interest in the collateral pursuant to the terms of its mortgage or other security agreement.

9.    **Stale Liens.**  On confirmation, all stale liens indexed against the debtors or property of the estate shall be released by the secured party.  "Liens" include mortgages, statutory liens (including mechanic's and judgment liens), security interests and financing

statements.  A "stale lien" is any lien which, upon confirmation of the plan does not immediately thereafter secure property of the reorganized entity.  A pre-petition lien which in fact secures post-confirmation property of the reorganized entity is not affected except as provided in the plan (including amendments), and the order of confirmation.

10.  **Post-Confirmation Jurisdiction.**  Pursuant to §502, the court shall retain post-confirmation jurisdiction to consider and to reconsider all claims.  The payments to creditors under the plan are estimated and are based upon the amount believed due.  Until confirmation and until all claims have been allowed, exact amounts cannot be determined.  The allowed secured claim of any junior secured creditor shall be recomputed and the payments adjusted accordingly (based upon the interest rate and amortization set forth in the plan, the amendments thereto or as agreed) after the amount of all senior liens and encumbrances have been determined and deducted from the gross value of the junior creditor's collateral.

11.  **First Payment; Pushback.**  In general, the plan calls for the first payment to creditors to occur on February 1, 2009.  In the event that the plan is not confirmed by that date, the first payment to creditors shall be thirty days following confirmation.

**12.00.  DATE AND SIGNATURES.**

1.  The date of this plan is March 13, 2009.


Randy E. Byers and Judy E. Byers


by /s/ Barry M. Barash_____
   Barry M. Barash, their attorney


Barry M. Barash (ARDC Reg. #108928) of
Barash & Everett, LLC
Debtors' Attorney
256 South Soangetaha Road, Suite 108
PO Box 1408
Galesburg, IL 61402-1408
Telephone: 309/341-6010
Fax:        309/341-1945
E-mail: barashb@barashlaw.com

# SCHEDULE 1: SUMMARY OF PLAN

## Name: Randy E. and Judy E. Byers

| Creditor | Class | Collateral/Comments | Total Debt | Collateral Value | Net Equity | Unsecured Component | Annual Payment | Int. Amort Rate | Amort (Yrs) | Date of Next Pmt |
|---|---|---|---|---|---|---|---|---|---|---|
| Security Savings Bank | CC1 | Proceeds of sale of cows & calves | $15,000 | $15,000 | | | Now paid. | | | |
| Security Savings Bank | CC2 | Corn - 894 bu | $4,470 | $4,470 | | | As sold or used. | | | |
| Security Savings Bank | CC3 | Hay, silage, feed & straw inventories | $15,426 | $15,426 | | | As sold or used. | | | |
| American General Life | CC4 | Cash value life insurance | $22,608 | $47,654 | | | As sold or used. | | | |
| | P4A | 2007 Income taxes | $14,505 | | | | $4,000 | 6.00% | NA | 01-Feb-10 |
| | P4B | 941 tax - 1st quarter 2008 | $1,588 | | | | $377 | 6.00% | 5 | 01-Feb-10 |
| Security Savings Bank | UCC1 | Farm machinery & equipment | $82,894 | $82,894 | $20,816 | | | 8.10% | 5 | 01-Feb-09 |
| Community National Bank | UCC2 | 2008 Dodge Caravan | $9,910 | $7,500 | | $2,410 | $2,738 | 6.00% | 3 | 01-Feb-09 |
| Community National Bank | UCC3 | 2005 Artic Cat 500 | $5,042 | $3,500 | | $1,542 | Return to creditor in full. | | | |
| Community National Bank | UCC4 | 2005 Honda Foreman | $3,645 | $3,645 | | $0 | $1,363 | 6.00% | 3 | 01-Feb-09 |
| Diversified Financial Serv. | UCC5 | H & S Spreader | $9,400 | $10,000 | $600 | | $2,232 | 6.00% | 5 | 01-Feb-09 |
| H & R Farm Credit Serv. | UCC6 | 2006 JD 6420 tractor & loader | $36,026 | $48,000 | $11,974 | | $7,764 | 7.15% Contract | | Contract |
| Deere & Company | UCC7 | 2006 JD 5525 tractor & loader | $11,230 | $28,000 | $16,770 | | $2,958 | Contract | | Quarterly |
| Wells Fargo Auto Financial | UCC8 | 2008 Chevrolet Silverado | $33,745 | $33,745 | | | $7,519 | Contract | | Monthly |
| Security Savings Bank | UCC9 | 1/2 interest cows, heifers & bulls | $7,444 | $7,444 | | | $1,869 | 8.10% | 5 | 01-Feb-09 |
| Silage Specialists | L1 | 4 silage wagons | $33,425 | $33,425 | | | Assumed & treated per contract | | | |
| Graber Ag Services, Ltd. | L2 | Graber Ag Bag model G6070C | $2,600 | $7,500 | | | Assumed & treated per contract | | | |

Total due $788,120

Annual Payments to Secured $51,636

Analysis of Security Savings Bank's claim:

CC1 - Proceeds of sale of cows & calves ($15,000)
CC2 - Corn - 894 bu ($4,470)
CC3 - Hay, silage, feed & straw inventories ($15,426)
UCC1 - Farm machinery & equipment ($82,894)
UCC9 - 1/2 interest cows, heifers & bulls ($7,444)

Unsecured component $662,886

# SCHEDULE 1: SUMMARY OF PLAN (Page 2)
## Name: Randy E. and Judy E. Byers

**ALL UNSECUREDS SHALL BE PAID AS FOLLOWS, IN FULL OF THE OBLIGATION, WITHOUT DEFICIENCY:**

| Creditor | | Total Unsecured Claim | Estimated Total Paid Under Plan |
|---|---|---|---|
| Security Savings Bank | U1 | $662,886 | $3,085 |
| Community National Bank | U1 | $3,952 | $18 |
| Capital One Bank | U1 | $2,609 | $12 |
| Reserve, Inc. | U1 | $6,698 | $31 |
| Cit Central Bank | U1 | $9,486 | $44 |
| Citgo | U1 | $5,078 | $24 |
| Gen Petroleum | U1 | $984 | $5 |
| Over Land Freight Services, Inc. | U1 | $9,400 | $44 |
| Diversified Financial Services LLC | U1 | $290 | $1 |
| LCAPT Settlement Corporation | U1 | $10,000 | $47 |
| Imperial Industries, Inc. | U1 | $125 | $1 |
| Recovery Management Systems Corp. | U1 | $32,934 | $153 |
| **Total Class U1 Unsecureds** | | **$744,443** | **$3,464** |

| | |
|---|---|
| Annual Payment to Secureds | $51,636 |
| Annual Payment to Unsecureds & IRS class P4A claim | **$4,000** |
| Total Payments to Creditors | $55,636 |
| Trustee's Fees @5% | $2,928 |
| Total Annual Payments | **$58,564** |

# SCHEDULE 2: CASH FLOW (Farm Combined)

**Name: Randy E. and Judy E. Byers & Rodney E. & Ginger M. Byers**

13-Mar-09
02:49:37 PM

## Gross Income:

| | |
|---|---|
| Corn | $398,256 |
| Beans | $32,400 |
| Straw & hay sales | $84,100 |
| Silage | $124,164 |
| Feeding income | $97,992 |
| Feed grinding | $14,496 |
| Custom hire | $81,979 |
| **Gross Income** | **$833,387** |

## Direct Operating Expenses:

| | |
|---|---|
| Labor | $69,084 |
| Repairs and maintenance | $45,120 |
| Cash rent paid | $62,542 |
| Machinery leases | $9,550 |
| Feed purchased | $0 |
| Seeds and plants | $50,500 |
| Fertilizer and lime | $101,000 |
| Chemicals | $25,250 |
| Machine hire | $63,015 |
| Supplies | $6,000 |
| Livestock expense | $0 |
| Gas, fuel & oil | $52,600 |
| Real estate taxes | $3,425 |
| Crop insurance | $12,400 |
| Other insurance | $4,980 |
| Utilities | $17,210 |
| Legal and accounting | $2,275 |
| Other farm expense | $5,030 |
| Feeder livestock purchases | $0 |
| Breeding stock purchases | $0 |
| Twine & wrap | $33,031 |
| Trucking | $4,500 |
| Interest operating | $9,500 |
| **Total Operating Expense** | **$577,012** |

## Summary:

| | |
|---|---|
| Gross Income | $833,387 |
| Operating Expense | ($577,012) |
| Net Operating Income | $256,375 |
| _Draws for Family Living & Taxes_ | |
| Randy E. and Judy E. Byers | ($30,000) |
| Rodney E. & Ginger M. Byers | ($30,000) |
| **Available for Creditors** | **$196,375** |
| _Post-confirmation annual loan payments_ | |
| Dekalb Feeds Inc. | ($32,400) |
| Security Savings Bank | ($50,226) |
| **Available for Plan payments** | **$113,749** |
| _Total Plan Payments_ | |
| Randy E. and Judy E. Byers | ($58,564) |
| Rodney E. & Ginger M. Byers | ($55,585) |
| **Estimated Excess** | **($400)** |

# SCHEDULE 3: PRO FORMA BALANCE SHEET AFTER REORGANIZATION
## Name: Randy E. and Judy E. Byers

13-Mar-09

02:49:37 PM

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand and in Bank (Estimated) | $500 | | |
| Cash value life insurance | $47,654 | American General Life - Cash value life insurance | $22,608 |
| Farm machinery & equipment | $35,250 | Security Savings Bank - Proceeds of sale of cows & calves | $82,894 |
| 2005 Dodge Caravan | $7,500 | Community National Bank - 2005 Dodge Caravan | $9,910 |
| 2005 Artic Cat 500 | $3,500 | Community National Bank - 2005 Artic Cat 500 | $5,042 |
| 2005 Honda Foreman | $3,645 | Community National Bank - 2005 Honda Foreman | $3,645 |
| H & S spreader | $10,000 | Diversified Financial Serv. - H & S spreader | $9,400 |
| 2006 JD 6420 tractor & loader | $48,000 | 1st Farm Credit Serv. - 2006 JD 6420 tractor & loader | $36,026 |
| 2006 JD 5525 tractor & loader | $28,000 | Deere & Company - 2006 JD 5525 tractor & loader | $11,230 |
| 2008 Chevrolet Silverado | $33,745 | Wells Fargo Auto Financial - 2008 Chevrolet Silverado | $33,745 |
| Interest cows, heifers & bulls | $7,444 | Security Savings Bank - 1/2 interest cows, heifers & bulls | $7,444 |
| Household goods & furnishings | $1,000 | IRS | $14,505 |
| 1996 Plymouth voyager | $400 | IRS | $1,588 |
| 2001 Wilson hopper trailer | $10,000 | | |
| 1992-30' flatbed trailer | $1,000 | Unsecureds @ 100% | $744,443 |
| 20' flatbed trailer | $500 | Forgive | ($744,443) |
| | | Homestead exemption | $0 |
| | | General exemption | $8,000 |
| | | Tools of the trade | $1,500 |
| | | Motor vehicle exemption | $400 |
| | | Life insurance exemption | $25,046 |
| | | Retirement accounts | $0 |
| | | Total Liabilities | $272,982 |
| | | Net Worth | ($34,845) |
| Total Assets | $238,137 | Total Liabilities and Net Worth | $238,137 |

# SCHEDULE 3 (Page 2): ANALYSIS OF DIVIDEND IF CASE CONVERTED TO LIQUIDATION UNDER CHAPTER 7
## Name: Randy E. and Judy E. Byers

Remarks:

1. Assets which are entirely encumbered and therefore have no equity for unsecured creditors are excluded.

| ASSET | EQUITY |
|---|---|
| Cash on hand and in bank | $500 |
| Household goods & furnishings | $1,000 |
| 2001 Wilson hopper trailer | $10,000 |
| 1993 30' flatbed trailer | $1,000 |
| 2003 40' flatbed trailer | $500 |
| Cash value life insurance | $25,046 |
| | ($14,505) |
| | ($1,588) |
| Exceptions | ($34,946) |
| Total equity | ($12,993) |
| | |
| Trustee's fees and expenses | $4,548 |
| | ------------ |
| Net liquidating dividend under Chapter 7 | ($8,445) |
| | ============ |

| NET PRESENT VALUE OF PAYMENTS TO UNSECUREDS | |
|---|---|
| Year | Amount |
| 2009 | $1,000 |
| 2010 | $1,000 |
| 2011 | $1,000 |
| 2012 | $0 |
| 2013 | $0 |
| 2014 | $0 |
| 2015 | $0 |
| 2016 | $0 |
| 2017 | $0 |
| 2018 | $0 |
| 2019 | $0 |
| 2020 | $0 |
| 2021 | $0 |
| 2022 | $0 |
| 2023 | $0 |

| | | |
|---|---|---|
| Total unsecured creditors (From schedule 1) | $744,443 | Total unsecured distribution | $3,000 |
| Percentage distribution under Chapter 7 | 0.00% | Assumed rate of interest | 6.00% |
| | | Net present value | $2,673 |
| Percentage distribution to Class U1 Claims per Plan | 0.36% | | |

# SCHEDULE 4: TAX RETURN SUMMARY

## Name: Randy E. and Judy E. Byers

13-Mar-09
02:49:37 PM

| Year | Gross Farm Income Sch. F | Expense Before Dep'n Sch. F | Depreciation | Net Cash Flow (Computed) | Net Income Schedule F | Adjusted Gross Income From All Sources Form 1040 | Net Operating Loss Carryforward |
|------|------|------|------|------|------|------|------|
| 2005 | $478,099 | $474,191 | $36,286 | $3,908 | ($32,378) | ($102,163) | ($93,907) |
| 2006 | $583,237 | $726,011 | $46,962 | ($142,774) | ($189,736) | ($223,705) | ($109,856) |
| 2007 | $806,740 | $596,943 | $75,073 | $209,797 | $134,724 | ($877) | ($234,005) |

The debtors' books and records and tax returns are available for inspection by interested parties.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

IN RE

RANDY E. BYERS and                             Chapter 12
JUDY E. BYERS                                  No. 08-81053

                    Debtors

## SCHEDULE 5
## NATURE OF DEBTORS' BUSINESS

### 1.00.  INTRODUCTION.

1.      Debtors have been engaged in a mixed grain and livestock operation since 1972.

2.      Randy E. Byers (age 60) and Judy E. Byers  (age 59) are the operators of the farm.  They will continue to operate and manage the reorganized entity.

### 2.00.  FARMS.

1.      The debtors own no farmland; they lease 315 acres on a cash-rent basis.

### 3.00.  LITIGATION.

1.      Pending Pre-Petition Litigation.  All pre-petition litigation was stayed by the automatic stay, 11 USC §362.  The pre-petition litigation is described as follows:

a.      None.

2.      Pending Post-Petition Litigation:

a.      None.

**IT IS SO ORDERED.**

**SIGNED THIS: March 03, 2009**

Thomas L. Perkins

THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RANDY E. BYERS and | ) | Chapter 12 |
| JUDY E. BYERS, | ) | Bankr. No. 08-81053 |
| | ) | |
| Debtor. | ) | |

<u>AGREED ORDER ON AMOUNT, ALLOWANCE, PAYMENT,
AND DISCHARGEABILITY OF THE IRS' CLAIM FOR FEDERAL TAXES</u>

The United States of America, on behalf of its agency, Internal Revenue Service

("IRS"), by counsel, Gerard A. Brost, Assistant United States Attorney for the Central

District of Illinois, and debtors, Randy E. Byers and Judy E. Byers, by counsel, Barry M.

Barash, and hereby stipulate and agree to entry this Agreed Order by the Court on the

amount, allowance, payment, and dischargeability of the claim for federal taxes under

the terms and conditions as follows:



DEBTOR'S
EXHIBIT
A

1

1. The IRS filed a timely Proof of Claim for Internal Revenue taxes on or about July 11, 2008.

2. The IRS filed an objection to the debtors' first proposed Chapter 12 Plan of Reorganization. It is the intention of the parties to incorporate herein the terms of their agreement resolving the IRS's objections thereto and that any amended Chapter 12 Plan of Reorganization is to be interpreted to provide for payment of the IRS in accordance with this Agreed Order.

3. At the time of the filing of the petition in this case, the debtors had not filed their Form 943 for the year 2008, because it was not yet due, and therefore all of their pre-petition federal tax liabilities were not known at the time. Consequently, the proof of claim reflects an estimated liability for the pre-petition portion of the tax liability that might be due on the Form 943 Tax return. At the time of the filing of this Agreed Order, the 2008 Form 943, which should have been filed on or before January 31, 2009, is not yet reflected on the IRS computer database. Therefore, the liability owed with this return, if any, remains unknown and the amount of tax due with the Employer's Annual Tax Return for Agricultural Employees, Form 943, is not specified in this agreed entry. Nevertheless, any such pre-petition employment tax due is a priority tax obligation, pursuant to the provisions of Section 507 (a)(8), that must be paid by the debtor in full in deferred cash payments over the life of the plan.

4. The priority tax claims of the IRS include petitioners' federal income tax obligation, including interest thereon, for the tax year 2007, in the amounts of $47,415.00

2

in tax and $23.91 in interest.

5. The priority income tax claim of the IRS for the year 2007 consists of two components as follows: 1) Self-employment tax (hereinafter FICA) in the amount of $15,698.00, less an economic stimulus payment of $1,200.00, for a balance of $14,498.00; and 2) an alternative minimum tax (hereinafter AMT) liability in the amount of $32,917.00. The interest amount of $23.91 is agreed to be allocated pro-rata to these two amounts, such that the total FICA portion is agreed to be $14,505.31 and the AMT portion is agreed to be $32,933.60.

6. The parties agree that the FICA liability, in the amount of $14,505.31 is a priority claim, pursuant to the provisions of Section 507(a)(8), that must be paid in full in deferred cash payments over the life of the debtors' Chapter 12 Plan, and that this liability is not one which is entitled to the special treatment provided by Section 1222(a)(2)(A)

7. The parties agree that the AMT liability, in the amount of $32,933.60 is a priority claim, pursuant to the provisions of Section 507(a)(8), but that it shall be treated as an unsecured claim not entitled to priority pursuant to the special treatment provided by Section 1222(a)(2)(A). In accordance with the language of Section 1222(a)(2)(A), the debtor must receive a Chapter 12 discharge, pursuant to the provisions Section 1228 for this AMT tax to be treated as an unsecured claim. In the event the debtors are not granted such a discharge, the liability for the AMT will otherwise retain its characteristics as a federal income tax liability for the year 2007, in

3

any other non-Chapter 12 bankruptcy proceeding or non-bankruptcy collection

circumstance.

8. The IRS has no objection to any request for, or provision of, a Chapter 12

Plan by the debtors that provides for payments over a period that is as long as five

years, as provided by Section 1222(c).

9. The parties stipulate and agree that this Agreed Entry will be binding upon

them in regard to further proceedings in the debtors' Chapter 12 case, and shall be

binding upon the debtors and any successor-in-interest to the debtors in any

superseding bankruptcy case, or in the event of dismissal or conversion of the debtors'

Chapter 12 case in which this Agreed Entry is entered.

IT IS SO AGREED AND STIPULATED:


FOR THE DEBTORS:                          FOR THE UNITED STATES:


  s/Barry M. Barash                           s/Gerard A. Brost
BARRY M. BARASH                           GERARD A. BROST
Counsel for Debtors                       Asst. U.S. Attorney
Barash & Everett, LLC                     One Technology Plaza
256 S. Soangetaha Road                    211 Fulton Street
P.O. Box 1408                             Suite 400
Galesburg, IL 61402-1408                  Peoria, IL 61602
Tel. No. (309) 341-6010                   Tel. No. (309) 671-7050


# # # #


4

## Barry M. Barash

**From:**       bnc@ilcb.uscourts.gov
**Sent:**       Tuesday, March 03, 2009 11:39 AM
**To:**         Courtmail@ilcb.uscourts.gov
**Subject:**    08-81053 Ch12 Randy E Byers and Judy E Byers -  Order (Generic)

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

### U.S. Bankruptcy Court

### Central District of Illinois

Notice of Electronic Filing

The following transaction was received from court, jcas entered on 3/3/2009 at 11:39 AM CST and filed on 3/3/2009
**Case Name:**         Randy E Byers and Judy E Byers
**Case Number:**       08-81053
**Document Number:** 106

**Docket Text:**
Order Re: (RE: related document(s)[89] Chapter 12 Plan filed by Debtor Randy E Byers, Joint Debtor Judy E Byers). (court, jcas)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** P:\Jill\Orders\08-81053.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1056124888 [Date=3/3/2009] [FileNumber=5742551-0]
[d8dbf6d82404862418354a1905a071f957bfc0037bb9d821e946c549f024654723c9
d899c643393158e8fec6322424392780350546d80b3cda1b746cae587155]]

**08-81053 Notice will be electronically mailed to:**

Barry M Barash     barashb@barashlaw.com, courtmail@barashlaw.com

Gerard A Brost     gerard.brost@usdoj.gov, margo.l.scamp@usdoj.gov

Michael D Clark     mclark13@mtco.com

Mary A Corrigan     mcorrigan@howardandhoward.com

1

Timothy J Howard     thoward@howardandhoward.com, psepich@howardandhoward.com

Laurie M Judd     LJudd@QJHP.com, dgrover@qjhp.com

Jon Gray Noll     noll@noll-law.com

Michael S Seneca     mseneca@howardandhoward.com, psepich@howardandhoward.com

Thomas R Siegel     swb@lawyer.com

Gloria C Tsotsos     gloria.tsotsos@il.cslegal.com

U.S. Trustee     USTPRegion10.PE.ECF@usdoj.gov

**08-81053 Notice will not be electronically mailed to:**

1st Farm Credit Services, FLCA
c/o Robert Lindstrom
MUSTAIN LINDSTROM & HENSON
1865 North Henderson Street
Suite 11B
Galesburg, IL 61401

eCAST Settlement Corporation
Bass & Associates, P.C.
3936 E. Ft. Lowell Road
Suite 200
Tucson, AZ 85712

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

IN RE:                          )
                                )
RANDY E. BYERS and              )          Chapter 12
JUDY E. BYERS,                  )          Case No. 08-81053
                                )
                   Debtors.     )

**STIPULATION AND ORDER ACCEPTING
CHAPTER 12 PLAN OF REORGANIZATION
--Dekalb Feeds, Inc. --**

DeKalb Feeds, Inc. ("DeKalb"), proposed secured lender to the Debtors, by Laurie M. Judd

of Quinn, Johnston, Henderson & Pretorius, Chtd., and the Debtors, by Barry M. Barash of Barash

and Everett, LLC, stipulate and agree as follows:

1.      The Debtors' Chapter 12 Plan of Reorganization ("Plan") contemplates financing to

be provided the Debtors by DeKalb, with the financing terms attached to the Plan as Exhibit 1.



2.     The financing terms that are attached as Exhibit 1 to the Plan shall be replaced with the revised financing terms attached hereto as Exhibit A.

3.     Exhibit A is incorporated herein by reference.

4.     All contract terms of the financing, once closed, including but not limited to DeKalb's lien positions described on Exhibit A hereto, shall survive, and shall remain in effect after, any conversion or dismissal of the Debtors' Chapter 12 case.

5.     DeKalb hereby accepts the Plan, as modified by this Stipulation.

DeKalb Feeds, Inc.                            Randy E. Byers and
                                              Judy E. Byers


By:   /S/ Laurie M. Judd            ___       By:   Barry M. Barash                ___

Laurie M. Judd                                Barry M. Barash, Esq.
Quinn, Johnston, Henderson                    Barash & Everett, LLC
  & Pretorius, Chtd.                          P.O. Box 1408
227 N.E. Jefferson                            Galesburg, IL 61402-1408
Peoria, IL 61602                              Phone:  (309) 341-6010
Phone:  (309) 674-1133                        Fax:    (309) 341-1945
Fax:    (309) 674-6503                        Email:  barashb@barashlaw.com
Email:  ljudd@qjhp.com

Certificate of Service

The undersigned certifies that on March 12, 2009, the foregoing Stipulation and Order Accepting Chapter 12 Plan of Reorganization was served by Notice of Electronic Filing on all Filing Users who have entered an appearance in this proceeding.

_/S/   Laurie M. Judd_____

Case 08-81053   Doc 111   Filed 03/13/09   Entered 03/13/09 15:51:10   Desc Main
Document   Page 31 of 35
Case 08-81053   Doc 1   Filed 03/12/09   Entered 03/12/09 15:47:24   Desc Exhibit
MAR-12-2009 THU 01:49 PM DEKALB FEEDS ROCK FALLS   FAX NO. 815 625 4896   P. 02
Page 1 of 2
03/12/2009  02:39   3897744272   PAGE  01
MAR-12-2009 THU 07:04 AM DEKALB FEEDS ROCK FALLS   FAX NO. 815 625 4896   P. 02

Proposed Terms for Financing from DeKalb Feeds, Inc. for Byers' Swine Project

**Lender,**
**Secured Party:**   DeKalb Feeds, Inc.
Rock Falls, Illinois.

**Borrowers:**   Randy E. Byers, Judy E. Byers, Rodney E. Byers, Ginger Byers.

**Loan Amount:**   Up to $130,000, plus loan expenses (as described below).

**Manner of**
**Disbursement:**   Direct payouts to contractors or vendors involved in converting the hog facility, on presentation to DeKalb of invoice with the Byers' written statement that the work in question is completed acceptably; or reimbursement to the Borrowers for expenses incurred and paid to contractors or vendors in converting the hog facility, on presentation of paid invoices acceptable to DeKalb, and with reasonable assurance as from time to time requested by DeKalb that the real property is free from mechanic's liens.

**Interest Rate:**   Variable monthly, at 2.5% over the Amcore prime with a floor of 5.5%.

**Amortization:**   Five years.

**Payments:**   Sept 10, R.B, RB, KK   10th R.B, RB KK
To begin dated, 2009, and to continue monthly on the 1st of each month until the loan is fully repaid, with all unpaid principal and interest to be due five years from closing.

**Prepayment:**   No prepayment penalty.

**Collateral:**   A first mortgage lien position on 20 acres referenced as Exhibit 2A in Borrowers' Chapter 12 Plans of Reorganization and located in Warren County, IL, Section 21; and

A first lien position on all contract and lease payments generated by the nursery/finisher facility contracted with the loan proceeds, under the initial contract with Brad and Lyle Stoecker, and also under any successor contract, with all such payments from the Stoeckers and all successor tenants to be made directly to DeKalb Feeds, Inc. At or before closing, Borrowers shall provide DeKalb with a copy of the initial, fully executed contract or lease for nursery/finishing services between Borrowers and the Stoeckers for a minimum of a one year period.

**Loan Expenses:**   At closing, Borrowers shall reimburse DeKalb for all its loan expenses, including reasonable attorney's fees, title insurance expense, and other costs. These expenses may be paid directly or from loan proceeds.

December 6, 2008

1.

Exhibit A

Case 08-81053   Doc 111   Filed 03/13/09   Entered 03/13/09 15:51:10   Desc Main
Document   Page 32 of 35
Case 08-81053   Doc   -1   Filed 03/12/09   Entered 03/12/09 15:47:24   Desc Exhibit
Page 2 of 5
MAR-12-2009 THU 01:50 PM DEKALB FEEDS ROCK FALLS      FAX NO. 815 625 4896      P. 03
03/11/2009  08:38   3897744272
MAR-12-2009 THU 07:04 AM DEKALB FEEDS ROCK FALLS      FAX NO: 815 625 4888      PAGE  02
P. 03

Hazard Insurance:      Borrowers shall provide DeKalb with proof of insurance against
property damage to the mortgaged property, which shall
show DeKalb as a loss payee with the lien position required above.

Other Provisions:      The loan documents shall also contain other provisions customary
for use in commercial lending.  The remedies for default shall include
but not be limited to modification of the automatic stay after notice
and a hearing.  The contract terms of the financing, once closed, and
DeKalb's lien positions referenced above shall survive and remain in effect
after any conversion or dismissal of Borrowers' Chapter 12 cases.

Closing:      Closing shall occur after the effective date of the confirmed Plans of
Reorganization, but no later than April 15, 2009.

DeKalb Feeds, Inc.,
an Iowa corporation

By: _____
Kelly E. Kesschau,
its President

Date:   3-12-09

Agreed:

_____
Randy E. Byers

Date: 3/12/09

_____
Rodney E. Byers

Date:   3-12-09

December 9, 2008

## Barry M. Barash

| | |
|---|---|
| From: | bnc@ilcb.uscourts.gov |
| Sent: | Thursday, March 12, 2009 3:47 PM |
| To: | Courtmail@ilcb.uscourts.gov |
| Subject: | 08-81053 Ch12 Randy E Byers and Judy E Byers - Stipulation |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

### U.S. Bankruptcy Court

### Central District of Illinois

Notice of Electronic Filing

The following transaction was received from Laurie M Judd entered on 3/12/2009 at 3:47 PM CDT and filed on 3/12/2009

**Case Name:**     Randy E Byers and Judy E Byers
**Case Number:**    08-81053
**Document Number:** 109

**Docket Text:**
Stipulation By DeKalb Feeds, Inc. and *Randy E & Judy E. Byers* Filed by Laurie M Judd on behalf of DeKalb Feeds, Inc. (RE: related document(s)[96] Objection to Confirmation of the Plan). (Attachments: # (1) Exhibit A) (Judd, Laurie)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** I:\1\General\DeKalb Feeds, Inc. - Byers Chapter 12 - 101 941 033\electronic filings\stip and order accepting plan - randy.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1056124888 [Date=3/12/2009] [FileNumber=5773418-0
] [23e4ec7fc542e89f59a21765031b162792e80d82cabb949b27d5663a6d83f39944c
5d6753183794520639dc667304e42ecde2ca21f825367e0b9ccd372df9323]]
**Document description:** Exhibit A
**Original filename:** I:\1\General\DeKalb Feeds, Inc. - Byers Chapter 12 - 101 941 033\electronic filings\exhibit a to stip.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1056124888 [Date=3/12/2009] [FileNumber=5773418-1
] [205dbee948f80b5dd639affeee364d68125c4746ead4c726d2f144eda1812582538
072fcf9fcbc3b24205c724f1221608f2528a76a42cb1d038c09b09bc32acc]]

**08-81053 Notice will be electronically mailed to:**

1

Barry M Barash on behalf of Debtor Randy Byers
barashb@barashlaw.com, courtmail@barashlaw.com

Gerard A Brost on behalf of Creditor Internal Revenue Service
gerard.brost@usdoj.gov, margo.l.scamp@usdoj.gov

Michael D Clark
mclark13@mtco.com

Mary A Corrigan on behalf of Creditor Deere & Company
mcorrigan@howardandhoward.com

Timothy J Howard on behalf of Creditor Security Savings Bank
thoward@howardandhoward.com, psepich@howardandhoward.com

Laurie M Judd on behalf of Interested Party DeKalb Feeds, Inc.
LJudd@QJHP.com, dgrover@qjhp.com

Jon Gray Noll on behalf of Creditor Diversified Financial Services LLC
noll@noll-law.com

Michael S Seneca on behalf of Creditor Security Savings Bank
mseneca@howardandhoward.com, psepich@howardandhoward.com

Thomas R Siegel on behalf of Creditor Wells Fargo Bank, N.A., Wells Fargo Auto Finance
swb@lawyer.com

Gloria C Tsotsos on behalf of Creditor Wells Fargo Bank, N.A., Wells Fargo Auto Finance
gloria.tsotsos@il.cslegal.com

U.S. Trustee
USTPRegion10.PE.ECF@usdoj.gov

**08-81053 Notice will not be electronically mailed to:**

1st Farm Credit Services, FLCA
c/o Robert Lindstrom
MUSTAIN LINDSTROM & HENSON
1865 North Henderson Street
Suite 11B
Galesburg, IL 61401

eCAST Settlement Corporation
Bass & Associates, P.C.
3936 E. Ft. Lowell Road
Suite 200
Tucson, AZ 85712

## EXHIBIT R: TRACT 2

The street address of Tract 2 is:

848 - 20th Avenue
Roseville, Illinois 61473

The legal description of Tract 2 is:

The East Half of the Southwest Quarter of Section 21, except the Railroad right of way as now located across the same; all that part of the North Half of said Section 21 bounded and described as follows:  Beginning on the South line of the Northeast Quarter of Section 21, at a point 2,656.8 feet West of the Southeast corner of the Northeast Quarter of Section 21, running thence North along the present fence line for a distance of 2,684.2 feet to its intersection with the North line of the Northeast Quarter of said Section 21, thence West along said North line for a distance of 104.5 feet to the Northeast corner of the Northwest Quarter of said Section 21, thence West along the North line of the Northwest Quarter of said Section 21, for a distance of 1,784 feet, thence South along the present fence line for a distance of 869.5 feet, thence East along the present fence line for a distance of 404 feet; thence South along the present fence line for a distance of 1,863.3 feet to its intersection with the South line of .the Northwest Quarter of Section 21, thence East 1,329.8 feet to the Southeast corner of the Northwest Quarter of Section 21, thence East 102.2 feet along the South line of the Northeast Quarter of said Section 21, to the point of beginning, also the East Half of Lot 14 of the School Subdivision in Section 16, being the East Half of the Southeast Quarter of the Southwest Quarter of said Section 16, all of said lands lying and being in Township 8 North, Range 2 West of the Fourth Principal Meridian, and containing in the aggregate 194 acres more or less, situated in Warren County, Illinois.

And also, the following described real estate:

A strip of land 100 feet in width extending over and across the following described real estate, said strip of land being 50 feet in width on each side of the center line of the track (now removed) of the Burlington Northern, Inc., a Delaware Corporation, to-wit: The East One-Half of the Southwest Quarter of Section 21, Township 8 North, Range 2 West of the Fourth Principal Meridian, situated in Warren County, Illinois.



DEBTOR'S
EXHIBIT

*R*